UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br><br>        v.<br><br>BRIAN SAWYERS,<br><br>                    Defendant. | CR 15-00070-RSWL-1<br><br>**ORDER re: Motion for Compassionate Release**<br>[229] |

Currently before the Court is Defendant Brian Sawyers' ("Defendant") Motion for Compassionate Release (the "Motion") [229].  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** the Motion.

## I.   BACKGROUND

In February 2015, a grand jury indicted Defendant on two counts of distribution of cocaine base in the form of crack cocaine, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(C), (b)(1)(B)(iii).  See Indictment 1:18-2:8, ECF No. 1.  The case proceeded to trial, and the jury returned a guilty verdict on both counts of the indictment on August 4, 2016.  See Redacted Jury Verdict, ECF No. 126.  As to Count Two, the jury also found that Defendant distributed at least twenty-eight grams of crack cocaine.  Id.  After a hearing on November 15, 2016, the Court determined that Defendant's three prior felony drug convictions, in conjunction with the jury's finding as to Count Two, meant that Defendant faced a ten-year mandatory minimum term of imprisonment on Count Two.  Order re 21 U.S.C. § 851 Prove-Up, ECF No. 146; see also 21 U.S.C. § 841(b)(1)(B).

On December 7, 2016, this Court sentenced Defendant to 180 months on each count, to be served concurrently. J. & Commitment Order 1, ECF No. 158.  Defendant appealed on December 14, 2016, see Notice of Appeal, ECF No. 161, and the Ninth Circuit affirmed on October 24, 2018.  See Mem. of USCA, ECF No. 193.

Defendant filed this Motion [229] on March 15, 2021.  Three days later, on March 18, the Court granted [235] the government's Ex Parte Application to Continue Hearing Date [234] from April 13 to April 27.  The government opposed [236] the Motion on April 5 but withdrew portions of its arguments on April 9, following the Ninth Circuit's decision in United States v. Aruda, 993 F.3d 797 (9th Cir. 2021).  Defendant replied [246] on April 13.

## II. DISCUSSION

**A.** <u>**Legal Standard**</u>

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, permits a defendant to directly petition the district court for a sentence reduction under the compassionate release statute. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). As relevant here, the statute sets forth three requirements. First, the defendant must exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, the district court must determine that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." <u>Id.</u> Third, the district court must consider the sentencing factors outlined in "section 3553(a) to the extent that they are applicable." <u>Id.</u> The defendant must establish the requirements for a sentence reduction by a preponderance of the evidence. <u>See</u> <u>United States v. Resnik</u>, No. CR 16-201 PA, 2020 WL 6803250, at *2 (C.D. Cal. Oct. 13, 2020) (citing <u>United States v. Sprague</u>, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

**B.** <u>**Discussion**</u>

1. <u>Administrative Exhaustion</u>

A court may evaluate a defendant's motion for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

the defendant's behalf" or after thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The parties dispute whether Defendant has satisfied the statutory exhaustion requirement.  <u>See</u> Mot. for Compassionate Release ("Mot.") 5:3-11, ECF No. 229; Gov't Resp. to Def.'s Mot. for Compassionate Release ("Opp'n") 14:20-15:18, ECF No. 236.  The Court concludes that he has.

Defendant asserts that he has complied with the statutory requirements set forth in Section 3582(c)(1)(A) because more than thirty days have passed since he requested release in April and September 2020. Mot. 5:3-5.  The government, on the other hand, contends that Defendant did not satisfy the administrative exhaustion requirement because his requests to the Bureau of Prisons ("BOP") are not premised on the same reason for release asserted here.[1]  Opp'n 15:14-15.  The government insists that Defendant is required to raise the "same factual basis for the compassionate-release request to the warden."  Opp'n 16:5-7.

The government's argument is one of issue exhaustion.  Narrower than administrative exhaustion,

---

[1] Defendant's September 2020 compassionate release request sought a sentence reduction based on hypertension, anxiety, and a "deteriorate[d] dis[c]," <u>see</u> Decl. of Anil J. Antony in Supp. of Opp'n Ex. 1 ("Req. for Compassionate Release"), ECF No. 236-1, whereas Defendant's current Motion is based on "COVID-19 and [Defendant's] risk factor for serious COVID-19 side effects—diabetes, hypertension, and borderline obesity," Opp'n 15:6-13.

4

issue exhaustion requires that a petitioner, "to obtain judicial review of an issue, not only must obtain a final decision . . . but also must specify that issue in his request for review by [the administrative decisionmaker]." Sims v. Apfel, 530 U.S. 103, 107 (2000); see also Univ. Health Servs., Inc. v. Thompson, 363 F.3d 1013, 1020 (9th Cir. 2004) (quoting Sims, 530 U.S. at 112) (O'Connor, J., concurring) ("In most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court."). Issue exhaustion is typically a product of statute or agency regulation. See id. at 107-08 (stating that "requirements of administrative issue exhaustion are largely creatures of statute"); see also Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 630 (9th Cir. 2008) (quoting Sims, 530 U.S. at 108) ("An agency's regulations also require issue exhaustion in administrative appeals when they provide that a petition for review must 'list the specific issues to be considered on appeal.'").

The government contends that the relevant issue-exhaustion requirement originates from the language of 28 C.F.R. § 571.61, which reads, "[t]he inmate's request shall at a minimum contain . . . [t]he extraordinary and compelling circumstances that the inmate believes warrant consideration." But Section 571.61 is unlike those statutes or regulations that the Supreme Court and the Ninth Circuit have deemed to impose an issue-

exhaustion requirement in that it does not foreclose consideration of a sentence reduction on bases not urged to the administrative body.

In _Woelke v. Romero_, for instance, the Supreme Court determined that issue exhaustion was required where a statute provided that "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 456 U.S. 645, 665-66 (1982) (citing _Detroit Edison Co. v. NLRB_, 440 U.S. 301, 311-12 n.10 (1979)). Contrarily, in _Vaught v. Scottsdale Healthcare Corp. Health Plan_, the Ninth Circuit held that the claimant was not required to exhaust specific issues where the benefits provision stated, "[y]our appeal must . . . clearly explain that you are appealing a claim denial and the reason why you think the Claims Administrator should reconsider your claim." 546 F.3d at 623.

The Court finds that the language of 28 C.F.R. § 571.61 more closely resembles the language discussed in _Vaught_. While Section 571.61 requires the inmate to specify the basis he "believes warrant[s] consideration," it does not require the inmate to set forth an exhaustive list of potential grounds for release. _See United States v. Williams_, 473 F. Supp. 3d 772, 775-76 (E.D. Mich. 2020) (concluding that petitioner satisfied the administrative exhaustion

statute despite raising arguments before the court that were not previously raised to the BOP); see also United States v. Pacarro, No. 15-00704 HG-02, 2020 WL 7344590, at *2 (D. Haw. Dec. 14, 2020) (stating that "[c]omplete issue exhaustion as to the Defendant's specific medical conditions is not required"); United States v. Torres, 464 F. Supp. 3d 651, 657 (S.D.N.Y 2020) (concluding that defendants "did not have to address the COVID-19 pandemic with the BOP before raising that issue in their compassionate-release motion"); United States v. Dillard, 456 F. Supp. 3d 1210, 1212 (D. Idaho 2020) (holding that 18 U.S.C. § 3582(c)(1)(A) "does not require issue exhaustion as argued by the [government]").

On September 9, 2020, Defendant completed a form wherein he sought a sentence reduction based on his medical and family circumstances.[2]  See Req. for Compassionate Release.  While it is unclear when Defendant's request was received, Warden Felicia Ponce denied Defendant's request for compassionate release on September 30, 2020.  Decl. of Paula Salazar Ex. A, at 3.

---

[2] Defendant may have exhausted his administrative remedies prior to September 2020.  Previously, in April 2020, Defendant requested "to go [to] home confinement" without specifying any reason for the request.  Decl. of Paula Salazar Ex. A, at 2, ECF No. 229-2.  The BOP responded, saying that "[a]ll inmates are being considered for home confinement.  At this time you are not being considered as you have only served 26.3% of your sentence." Id.

Defendant has therefore met the requirements of 18
U.S.C. § 3582(c)(1)(A) and may seek review before this
Court.  See United States v. Parker, 461 F. Supp. 3d
966, 974 (C.D. Cal. 2020) (stating that "[e]xhaustion
occurs when the BOP denies a defendant's application").

     2.  Extraordinary & Compelling Reasons

     18 U.S.C. § 3582(c)(1) permits a sentence reduction
only upon a showing of "extraordinary and compelling
reasons" and only if "such reduction is consistent with
applicable policy statements issued by the Sentencing
Commission."  Rather than establishing a statutory
definition of "extraordinary and compelling reasons,"
Congress provided that the Sentencing Commission, "in
promulgating general policy statements regarding the
sentencing modification provisions . . . , shall
describe what should be considered extraordinary and
compelling reasons for sentence reduction, including the
criteria to be applied and a list of specific examples."
28 U.S.C. § 994(t).

     The Sentencing Commission issued a policy statement
under U.S.S.G. § 1B1.13, wherein the Commission set
forth several "extraordinary and compelling reasons."
See U.S.S.G. § 1B1.13 Appl. Notes 1(A)-(D).  The Ninth
Circuit recently held, however, that the statement
applies only to motions filed by the BOP Director, not
to motions for compassionate release filed by
defendants.  See United States v. Aruda, 993 F.3d 797,
801-02 (9th Cir. 2021) (holding "that the current

version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant").  Accordingly, while U.S.S.G. § 1B1.13 may provide useful guidance, district courts "are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'"  Id. at 801 (citing United States v. McCoy, 981 F.3d 171, 281-84 (4th Cir. 2020)).

Here, Defendant contends that a sentence reduction is appropriate because he is particularly susceptible to COVID-19 based on his hypertension, diabetes, and borderline obesity.  Mot. 6:3-5, 12:4-11.  Defendant refers to an "antibodies-resistant" California variant of COVID-19 to suggest that he remains susceptible to the virus despite having already contracted it.  Id. at 7:9-8:11.  He further argues that FCI Lompoc's "massive COVID-19 outbreak" in May 2020 indicates the facility's inability to limit the spread of COVID-19,[3] thereby placing Defendant "at a continued high risk of contracting COVID-19 and, as a result, suffering grave, long-term health consequences or death."  Id. at 6:5-8.

The government, on the other hand, insists that Defendant has failed to identify any "extraordinary and compelling" basis for a sentence reduction.  Opp'n 1:25-28.  It emphasizes Defendant's decision to forgo the

---

[3] Although he referred to the COVID-19 outbreak at FCI Lompoc, Defendant is not housed at FCI Lompoc but rather at USP Lompoc.  See Reply 9 n.3; see also Antony Decl. Exs. 3-4, 7-8.

COVID-19 vaccine and suggests that courts "would create
perverse policy incentives that would thwart the ability
of the BOP to vaccinate all staff and inmates" by
granting sentence reductions despite defendants'
election to forgo the vaccine.  Opp'n 22:12-28; Revision
of Gov't's Args. in Resp. to Def.'s Mot. ("Gov't's
Suppl. Mem.") 1:28-2:1, ECF No. 245.  Additionally, the
government argues that Defendant's failure to identify
any deficiencies in his care at USP Lompoc also weighs
against a sentence reduction.  Opp'n 22:2-5; Gov't's
Suppl. Mem. 2:3-6.

     The Court concludes that Defendant has not
established an "extraordinary and compelling" reason for
release.  Defendant's reliance on the risks of COVID-19
as a basis for release is unavailing.  Defendant was
offered the Pfizer-BioNTech vaccine in late 2020 but
refused it.  See Decl. of Anil J. Antony in Supp. of
Gov't's Resp. to Def.'s Mot. ("Antony Decl.") Ex. 3, at
1-2, ECF No. 236-1.  The glaring consensus among
district courts is that refusal of a COVID-19 vaccine
subverts a defendant's compassionate release motion.
See, e.g., United States v. Baeza-Vargas, No. CR-10-
00448-010-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr.
5, 2021) (collecting cases) ("Judges of this Court, as
well as others around the country, have ruled with
consistency that an inmate's denial of a COVID-19
vaccination weighs against a finding of extraordinary
and compelling circumstances."); United States v. Piles,

No. 19-292-5 (JBD), 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021) (noting courts' recognition "that a defendant's refusal to be vaccinated substantially diminishes any argument for release premised on the risk posed by COVID-19"); United States v. Figueroa, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); United States v. King, No. 16-CR-478-11(CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (concluding that there were no extraordinary and compelling reasons for release where the defendant refused the Pfizer-BioNTech vaccine); United States v. Lohmeier, No. 12 CR 1005, 2021 WL 365773, at *3 (N.D. Ill. Feb. 3, 2021) (stating that the defendant "cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction" and that the defendant "is contributing to any risk that remains"); United States v. McBride, No. 5:19-CR-00007-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (stating that "[d]efendant's refusal [of the vaccine] undermines his assertion that extraordinary and compelling reasons exist"); United States v. Gonzalez Zambrano, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) (remarking that "[i]t would be paradoxical to endorse a system whereby a defendant could manufacture

11

extraordinary and compelling circumstances for
compassionate release by unreasonably refusing the
health care afforded to them").

Defendant argues that his refusal of the vaccine
does not undermine his Motion because he declined the
vaccine only after being denied information from BOP
personnel about the vaccine's interaction with his
prescription medications.[4] See Def.'s Reply in Supp. of
Mot. ("Reply") 6:10-16, ECF No. 246. But Defendant's
refusal of the vaccine, regardless of the reasons
underlying the decision, does not alter the Court's
conclusion that there are no extraordinary and
compelling reasons for release. See United States v.
Toney, No. 2:15-CR-2, 2021 WL 1976804, at *1 (N.D. Ind.
May 18, 2021) (determining that a refusal to be
vaccinated weighs heavily against compassionate release
even though the defendant "fears possible side effects
or medical consequences from the vaccine"). Defendant
"cannot simultaneously claim that he must be released
because of the risk of complications while refusing a
vaccine that could virtually eliminate that risk."
United States v. Jackson, No. 15-cr-260(7)(PAM/TNL),
2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021).

---

[4] Defendant's averment that he was not apprised of the
vaccine's potential risks is dubious. He signed a COVID-19
vaccine consent form, in which he indicated that he "had the
opportunity to ask questions about the benefits and risks of
vaccination." See Antony Decl. Ex. 3, at 2. He thereafter
declined the vaccine. Id.

While Defendant is correct that the Centers for Disease Control and Prevention ("CDC") has identified some of his health conditions, including diabetes and hypertension, as particular risk factors for COVID-19, the fact of the matter is that Defendant's susceptibility to COVID-19 at USP Lompoc[5] remains slight. Even though Defendant has not been vaccinated, FCC Lompoc, the correctional complex comprising both FCI Lompoc and USP Lompoc, has fully inoculated 226 staff and 1180 inmates. See COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus (last visited June 4, 2021). The inoculation of other inmates and staff allays significant concerns about Defendant's susceptibility to COVID-19, even considering his risk factors.[6] See COVID-19 Vaccines Work, https://www.cdc.

---

[5] Defendant asserts that he is housed in a minimum-security satellite camp adjacent to USP Lompoc and that there is insufficient evidence to conclude that statistics pertaining to USP Lompoc include the satellite camp. Reply 9 n.3. The government has attached several records, however, indicating that Defendant is housed at USP Lompoc, and a search on the BOP's website reveals the same. See Antony Decl. Exs. 3-4, 7-8. In any event, the statistics cited on the BOP's website seemingly include all facilities within USP Lompoc, not just the primary penitentiary. See USP Lompoc, https://www.bop.gov/locations/institutions/lom (providing USP Lompoc's population as the aggregate population of three facilities).

[6] The CDC has also noted the vaccines' efficaciousness against many of the COVID-19 variants. See Key Things to Know about COVID-19 Vaccines, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (stating that "[c]urrent data suggest that COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States").

gov/coronavirus/2019-ncov/vaccines/effectiveness/
work.html (updated May 20, 2021); see also Lohmeier,
2021 WL 365773, at *3 ("[T]hat other inmates and staff
are being vaccinated also lowers [Defendant's] risk
exposure."); United States v. Robinson, No. 2:76-cr-082
JD, 2021 WL 2134569, at *3 (N.D. Ind. May 26, 2021)
(noting that, "while [defendant] may not be vaccinated,
the risk of the virus spreading through his facility and
infecting him has likely declined given the high
percentage of fully immunized inmates in his facility");
Figueroa, 2021 WL 1122590, at *5 (noting the successful
efforts of a BOP facility in which "vaccines are being
administered to both staff and inmates").  Furthermore,
as of the date of this Order, USP Lompoc reports zero
positive COVID-19 cases among inmates and staff.  See
COVID-19 Cases, https://www.bop.gov/coronavirus (last
visited June 22, 2021).  Between the vaccine rollout and
other measures employed to keep inmates safe, USP Lompoc
has recently proved effective in mitigating the spread
of COVID-19.

Accordingly, the Court finds no "extraordinary and
compelling" reasons warranting a sentence reduction.
The Court therefore need not address the 18 U.S.C. §
3553(a) factors.

///

///

///

///

# III. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**


DATED: June 22, 2021

/s/ Ronald S.W. Lew
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge